Good morning, Your Honor. Alan Bloom appearing on behalf of Mr. McGann. Quite frankly, I think the difficult portion of this case and how I can assist the Court most has to do with the evaluation of the facts, which are here. And so I'm going to start with what I believe are the core, the center of this Court's decision, and that has to do with attempting to come to a factual evaluation. In the case that we have before us here, there are two victims and there are two people who are part of the assailants, are accused of the assailants. Francisco McGann, my client, is one, and his cousin is another on the side of the — could be the assailants. The victims in this case are Mr. Carro, who died, and Mr. Salvador, who was the victim of the attempted murder. I see the case this way, that if it is — if there's a difference between the two assailants, I'll call them, in terms of their — of their relative responsibility, to the point that one of them is guilty of both the murder and first-degree or premeditated attempted murder, I'll call it first-degree attempted murder, and the other person is not guilty of attempted — of premeditated murder, but rather might be guilty of just second-degree attempted murder. If there is such a difference, then my client didn't get a fair trial. One of the two assailants was wearing this plaid shirt that was bloody. That person is clearly being — is clearly the person who was the — who killed Mr. Carro. How does — how does this all get affected by the plea of guilty? I mean, your client states, you know, I stabbed this — the one who died. Right. He says, in the — by the time that Mr. Carro's case comes back, it gets reversed because he wasn't allowed to present the evidence at the first trial that he was not wearing the plaid shirt. Right. It puts him face-to-face with the guy who died and suggests that — that he attacked probably the other man from the front. I think Your Honor is absolutely right, and I applaud the Court's use of the word it suggests, because it does suggest that, but it doesn't answer the question. It's the equivalent of somebody in the middle of this appellate process making an admission to somebody else, like somebody in jail or something, that he — that he was more involved. And if there would be ordered a new trial, that subsequent admission, I mean, that's what this really is when — when he pleads guilty to manslaughter and when it comes back. That subsequent admission could be used against him at the trial. There's no question about that. I say that doesn't end the issue by any means, because there's a lot of explanations. The reason why you would confess to somebody in jail could be because you're threatened or could be because you're trying to brag for a number of reasons. And in this case, the reason why he could make a admission and plead guilty to the manslaughter, the context of that could be presented to the jury on this future jury, this future retrial. And what would it say at that time? That I — that I'm a kid who didn't get out of tenth grade, I've got a fifth-grade education and most of all, I was given literally five minutes before the trial was to start. I was given this — this timeline that you have five minutes to either plead to the manslaughter. The lawyer that I knew didn't spend a lot of time with me. He said, don't worry about it. He, the lawyer, wrote the words in, I stabbed Caro, not me. He said, just sign here to do it. He didn't know that there's an Alfred v. North or a People v. West that could have said that I'm pleading guilty without admitting responsibility. He — and I didn't have a chance to talk to my family or the mom who was sitting and dad sitting in the courtroom like I did on other things. And so that's why I signed that form. And a D.A. could say, you know, you don't believe him. He really knew what he was doing. But a defense attorney, quite honestly and quite effectively, I think, could say, yes, he made that statement, but he was still not the person who did it. I take your point that what happens after the trial in further proceedings down the road doesn't really bear on whether he got a fair trial to begin with. I, you know, I buy that. I can see — I actually, Judge, I have to argue against me in that. I can see that there's a pullback to it. I can see that some sort of subsequent behavior could have an impact as to whether or not there's prejudice the first time through. And I can see that. That's what I think why — But, Mike, what I was getting at is the evidence still showed that your guy, if I understand your theory of the case, stabbed Rodriguez five times in the back. No. No, he stabbed him once. My theory is he stabbed him once. It says he stabbed him in the shoulder once. Once. That's it. And that's what I think is different. There was one stab wound in the — No, there are multiple stab wounds in the back. And I'm saying my guy didn't do the other ones. That's what I'm saying. The district court takes that leap of faith, and I think it's wrong. The district court says the evidence showed that there were five stab wounds in the back and multiple stab wounds to the stomach, and therefore, since my guy admitted to stabbing in the back in the shoulder, that that means he must have been the one to stab five times in the back. He didn't so testify to that. And I contend he did not do that. He says he didn't do it, and I think the evidence would show he did not do that. He did say his conduct was to pull off — to pull away Salvador from attacking his cousin, who was there, and in defense of him, in fact, did stab him once in the shoulder, and then when the guy turned around, he, the defendant, left. And that left the victim, Mr. Salvador, with the other person, Isaias, who we say is the guy wearing the plaid shirt that's bloody, who finished the job. But how does the — the issue of prejudice is one that obviously we need to focus on. You've talked about it in connection with the subsequent confession, as it were, I killed Caro in an unreasonable self-defense in heat of passion. But I'm having difficulty understanding how the shirt reflects on the issue of premeditation where the defendant admits basically he brought a knife to a fistfight. He admitted to stabbing Rodriguez. The wounds on Caro were consistent with the knife, not the screwdriver, that Isaias was supposed to have had. I mean, don't those all — don't those all overwhelmingly support the conclusion that it was indeed your client who was the assailant who killed Caro, and thereby probably indicating that he's also the fellow that did most of the damage to Rodriguez with that knife? I don't think — no, I don't think so, Judge. I think it overwhelmingly shows that no matter — even if he's not wearing the bloody shirt, that he's responsible for the attempted murder of Salvador. And I concede that he is responsible for the attempted murder of Salvador. The question here is a matter of degree. The question is attempted murder of Salvador in the second degree or without the premeditation is really not first or second degree attempted murder, but I'll call it that. The being guilty of second-degree attempted murder is what he is, but the difference is the difference between whether that or whether he's guilty of attempted first-degree murder. Now, that's only the difference between everything in this case. Second-degree attempted murder has a maximum of seven years in State prison. First-degree attempted murder is what he's serving now, has a maximum of forever. It's not — Why does the — why does the shirt indicate premeditation? Because the shirt was — was worn by the person who did — who did the main damage. That was the business. That was the mean business end of it. But is there any conclusion that the jury could reach following the autopsy results that it was your client that did the main damage? Is there any evidence? Because Caro's — I mean, Caro's blood is on the shirt. They could only conclude he did the main damage is if he's wearing — if they conclude he's wearing the shirt. And the whole point of why — But he's the only one with a knife, isn't he? What I saw was a knife and a screwdriver. Isaiah had a screwdriver. Your client had the knife. Yes. And there were — the screwdriver was sharpened, and there was evidence that supported a conclusion — well, there's evidence that supported that the knife-wielding person did it, but there's also enormous evidence, I think the overwhelming evidence, that besides the particular weapon involved, the person who had the bloody shirt, the plaid shirt, that's the real main culprit. That's the person who killed Caro. That's the person who, with premeditation, attempted to kill Mr. Salvador. So you contend — do you contend that the screwdriver was sharpened in such a manner that the autopsy results could be misleading and that, in fact, the screwdriver could have been the weapon of choice that was used on Caro? Absolutely. There's — I don't necessarily — I wouldn't use the word misleading. I'd say it's subject to different interpretations. I mean, the jury is never told just because one piece of evidence comes from an expert they must accept it. They're told just the opposite. They're told don't accept it just because it's an expert. Accept it only if it makes sense to you and so forth. So just because he's an expert and comes in and signs off on it doesn't mean the jury has to do it, even in the absence of some controverting other expert. You look at all the evidence together, and in this case, I think it truly is overwhelming that the main culprit here was the — was the plaid shirt guy. And there was tremendous evidence that could have established the plaid shirt guy was not my client. Number one, he confessed to a guy named Enriquez, which wasn't allowed to come in. Number two, he confessed to my guy's mom, which wasn't allowed to come in. Number three, he confessed to the police in his videotape two times, and that wasn't allowed to come in. And number four, there was a video camera of him, a videotape of him a short time before, wearing the plaid shirt, not right then, but a very short time. Clearly a clear link. Now, that's why the State court overturned the first time around, saying that this was relevant, it could have mattered. They just said it wouldn't have mattered as to attempted murder. And I agree with them. It didn't necessarily matter as to attempted murder, but it very much mattered as between second-degree attempted murder and first-degree attempted murder. And that, to me, is very, very, very critical. The premeditation presumably comes from the fact that it would be the subsequent doing it again would be the what makes premeditation. That's your argument. That's right. The State court said it doesn't matter. The other guy, even the non-plaid shirt guy, when it came to the attempted murder, the jury could have concluded that he was also had an intent to kill. And you're absolutely right. How many times the stabbing, how often it was, did he just stab him in the shoulder one time and then leave, which could be the reasonable response of what you're trying to do under those circumstances to eliminate this intent to kill, or was it repeated stabbings, and particularly in terrible parts of the body? And that's why I think it's very important. I don't think we're just splitting hairs in any way when we talk about that this case goes to the question of the degree of the attempted murder. What do you work this into the AEDPA standard? Well, the law talks about, I mean, Tinley, which incorporates chambers or based on chambers, talks about that. The gang evidence, which I'm not talking about here, is a small piece of that, too, because the extra part is if you're a gang, one for all, all for one, you always adopt the same sort of stuff. So the introduction of the gang evidence here, so there you're talking about fundamental unfairness. So in my view, the AEDPA standard is not met because it's unreasonable to conclude that these facts would not have the State court was unreasonable in concluding that it would not have mattered as to degree. And I should say that the issue of the degree was never addressed by the State court. They rendered their opinion. They overturned the murder case. They let the attempted murder stand. Then in a petition for a rehearing, Attorney Wallingford, a very fine State appellate attorney, he raised it, this exact issue which I'm just raising now, he raised that by petition for rehearing, saying it matters as to degree. And the Court never wrote any opinion on that, on that decision at all. They affirmed. I guess you could say by their denying of the rehearing request that they are adopting their original, but they never wrote anything on it, and then the Supreme Court never wrote anything on it. Would you tell me, again, to what extent we can consider his subsequent plea? I'm not clear what your position is on that. Well, I think it's the district court thought you can consider it because it goes back, it rents back the issue of prejudice. Logically, it would if we're talking about some future trial. The question really is, in my mind, kind of what you raised, that even though logically you might get to that at some future trial when it's reordered, they could consider it then. To consider it now is wrong. You shouldn't consider it now. It's a question of whether or not it was a fair trial beforehand. At the time the State court rendered its decision, was that the proper decision or not? And I would submit it wasn't the proper decision, and you don't anything that comes up later, it has relevance to what would happen subsequent, but doesn't have relevance to whether or not the State court decision was unreasonable at that time. But we do have a very unusual kind of factual pattern of the case here. I mean, you have two charges that are both going convicted, and then one of them is overturned and comes back. The other case continues on in its path of the appellate process. And while that's going on, there's this admission. And my view is that the decision really, the timeline stops at the point of time when the State court makes its decision as to the State court makes its decision as to the reasonableness of the degree. And what happened later on, a later confession of some kind, or in this case, a plea to the manslaughter, really doesn't go back to that at all and shouldn't be considered. I see the relevance how it would come out when I represent them at the new trial, which I'm sure this Court's going to grant. But when the – I can see the relevance. But for the appellate purposes, in my view, I really don't think that it should be part of the consideration. Roberts. Thank you very much. Thanks, Your Honor. Good morning, Your Honors. Deputy Attorney General Theodore Cropley appearing on behalf of Respondent Apelli, and may it please the Court. Your Honors, here, under these particular circumstances, any additional evidence of who may or may not have been wearing this bloodstained shirt simply is not probative on whether the Petitioner is guilty of a premeditated attempted murder. The – especially in light of the fact that Petitioner admitted stabbing Salvador Rodriguez with a knife. Here, as to Salvador Rodriguez, the victim of the attempted murder, it's clear from the evidence at trial, including Petitioner's own testimony, that two people attacked him. And Petitioner, therefore, either was the person who fatally stabbed Isidro Caro and stabbed Rodriguez in the front, or was the person that stabbed Rodriguez with a knife in the back. And Respondent would submit that under either of these versions, the jury reasonably could have found Petitioner guilty of premeditated attempted murder. I suppose the question isn't whether there's sufficient evidence. It's whether other evidence was improperly excluded. I mean, you're saying that what was there, the jury could reasonably have found. That's true, Your Honor. But what we – what the jury was faced with in this case was that, again, Petitioner's defense to the attempted murder charge at trial was not that he wasn't the stabber, but was that he had justification to stab Salvador Rodriguez, either self-defense or defense of others. And simply who was wearing the bloody shirt would not have helped Petitioner in this defense, and the jury rejected this defense. Well, what – on what ground was it excluded by the district? What was the theory of the trial court? Well, the trial court, there – as counsel stated, there were kind of two separate issues here. The Petitioner's counsel at trial attempted to have the trial court admit statements that Isaias, the cousin of Petitioner, made to a friend of his and to Petitioner's stepmother, that he included in those admissions were that Isaias was the one wearing the blood-stained shirt. And the ineffective assistance of counsel argument is simply that defense counsel failed to present admissions Isaias apparently made to law enforcement. Again, that included he may have been wearing this blood-stained shirt. So the trial court excluded Isaias' statements to his friend and stepmother, Petitioner's stepmother, and defense counsel did not introduce the evidence that he may have said he was wearing the shirt to law enforcement. So that's – that's what was not presented at trial. And again, it boils down to who was wearing the blood-stained shirt. But why wasn't the evidence – what reasons were given for excluding it? Well, the trial court, for excluding the evidence that Isaias told a friend, I believe Enrique Enriquez, was simply that that would not have contradicted Petitioner's theory that he acted in self-defense. I believe the – the trial court simply found that, first of all, that Enrique Enriquez, I believe the trial court mentioned he had the credibility of a turnip at that point. And the reason he excluded – the trial court excluded the statement Isaias made to Petitioner's stepmother was simply that the trial court had concern that the – this information came forth so late in the process, many months after, apparently, this conversation took place between Isaias and Petitioner's stepmother. And the trial court also had trouble or difficulty believing that this conversation actually took place. But doesn't all that go to the weight as opposed to its admissibility? Well, it certainly does. And that would be – and again, as the court of appeals certainly found in reversing the second-degree murder charge. But as far as the remaining count of premeditated attempted murder, even assuming that this – this bloody shirt evidence came in, it simply would not be probative on this premeditated attempted murder charge. And in fact, as Respondent pointed out in its brief, the admissions may have actually hurt Petitioner, for not only did Isaias admit that he was wearing the bloody shirt, but he said in one of his statements that he stabbed someone with a screwdriver. And that directly – that strong corroboration of the other evidence at trial to show that it was actually Petitioner that stabbed – fatally stabbed Ysigro with the knife and also stabbed Salvador from the front. But more importantly, the – Isaias also – as well as his admissions that he wore this shirt, also said that he remembered attacking someone from behind. And this would strongly corroborate Salvador Rodriguez's testimony that while he and Ysigro were fighting Petitioner, he felt an attack from behind. And when he turned to confront this attacker, who did he see but the person who started this whole melee by kicking the dog, Isaias. So that would have strongly corroborated Salvador's testimony that he was stabbed in the back by Isaias and in the front by Petitioner, who also then presumably was the one that stabbed and killed Ysigro. So you don't – you don't necessarily agree with the observation of counsel that whoever wore the shirt was the – was the one who did the – run of the damage to Mr. Rodriguez? Not necessarily. I believe that – the Respondent believes that the person wearing the bloody shirt probably was the one that inflicted some of the damage, certainly. There were some spots of blood by both victims, but also by Petitioner. I don't believe any – any spots of blood were from Isaias. But it's clear, at least as far as Salvador Rodriguez is concerned, who is – is really the – the only one we're concerned about with the attempted murder charge, that Petitioner stabbed him with a knife, whether that was from back, you know, once or five times. And I – I don't believe that there was any other evidence that anybody else besides Petitioner and Isaias were involved with this altercation with Ysigro and Salvador Rodriguez. So it's – it's certainly – the evidence would show that Salvador – or that Petitioner was the one that stabbed Salvador multiple times in the back. But even if it was once in the back with this knife, we're faced with that admission by – by the Petitioner. How does the – how does the position of the Petitioner vis-à-vis the victim lend any credibility or weight to the issue of – of whether or not it was in defense of others or – or premeditated? Well, in – as far as defense of others, under California law, in order to – to obtain the defense of – defense of others, the person who's acting in defense of the others would need to have – have feared that the person being attacked would suffer great bodily injury. And although, presumably, that may have been what was happening to Isaias under Petitioner's terms, he never – there was no evidence presented at trial that he feared Isaias was being – was suffering serious bodily injury. And – and the jury, in fact, rejected that justification claim. But as far as premeditation was concerned … What did he say – what did he say he did? Excuse me, Your Honor? Why did – did he explain why he did what he did? He did explain. He said that he went – he went to the – to the defense of his cousin. Well, then he did bring up defense of others. But he didn't – he didn't say that he feared that his cousin was suffering serious bodily injury at the time. A fine … You've got to use the legal language, you mean? A fine distinction, perhaps, Your Honor, but – but again, that was not – that's – that's one of the elements for defense of others, and there simply was not any evidence presented at trial on that element. Again, perhaps a fine distinction, but a distinction nonetheless. May I ask you also the same thing I asked Mr. Bloom? Certainly. In deciding whether the district court correctly or incorrectly handled the petition for habeas corpus, can we take any account of his recent plea? I believe so, Your Honor, and again, unlike … Is there authority that tells us we can do that, or is … Well, Your Honor, I don't believe there's any direct authority, but what this court is charged with is determining whether the state court unreasonably – decisions were unreasonable in the light of the circumstances. And what this court knows … Well, I don't know if there's an actual rule, but I don't know if there's an actual guilt rule, you know. Perhaps not, Your Honor, but what – what this court faced with and knows now is that Petitioner didn't simply confess to a cellmate, but in open court changed his plea and admitted stabbing and killing Isidro. And I believe that's a circumstance that this court can take into account in determining whether the trial court's decision – again, it's one-sentence decision in denying the re-hearing, where the first – which was the first time where this was brought up in regards to the attempted murder. This court should find that that was not an unreasonable decision by the – by the state courts. Again, no one … Because subsequent events proved it correct? Is that your … Your Honor, what – can you repeat that? Because – because years later, new information has come forward to prove that the trial judge was – was right after all? Is that – is that the theory? That – that certainly is – is – potentially, yes, Your Honor, because the – what this court is concerned with is, again, the decision of the trial court, of the state courts, not necessarily the reasoning behind it. And the state courts, in finding, as they did, which – which the district court here upheld, and the district court did take some – or did place some stock with Petitioner's subsequent plea as well. I believe that is something this court can – can consider. But even if this court sets that aside and doesn't even take into consideration Petitioner's subsequent plea to killing Isidro, the state court's decisions, just looking at what the state courts knew at the time they knew it, was – was not an Again, there was little probative value of who wore the shirt in regards to the permitted attempted murder charge. In fact, the – had the trial court admitted this, it probably would have hurt Petitioner more than helped. So with – in that – in that vein, then simply the trial – or the court – the state court's findings that – that it was – that it was not probative on this issue was – was certainly reasonable. The – the second issue regarding the introduction of gang evidence that I'd like to just touch upon briefly, again, Petitioner indicates that the limited brief indication that Petitioner may have shouted out Isidro while – either during or after this fight made it so prejudicial that the – the jury decided to find him guilty of premeditated attempted murder instead of attempted murder, just doesn't – doesn't hold much weight. Again, Petitioner admitted stabbing Salvador Rodriguez. The gang evidence, limited as it was, put some of the – the gang names in context. Petitioner was known as, I believe, Fink and Sneaky, and it put that into context. But most importantly, this – this gang evidence was not exploited by the prosecutor. The prosecutor several times in closing and rebuttal indicated that the only reason this gang evidence came in was on the issue of identity. And the court of appeals here, in the state court of appeals, said, listen, that – that was – it was an error to introduce this gang evidence because there's plenty of other evidence of identity. But still, by – Petitioner, by pleading not guilty, puts that issue at issue of identity. And so it's – the introduction was not – I mean, you can understand why the trial court did admit it in error, as the court of appeals found, but harmless error. Because again, the prosecutor did not seek to exploit this – this evidence. He specifically stated that it was only introduced for identity. And again, given the fact that Petitioner admitted stabbing Salvador Rodriguez with a knife, really renders this – this limited gang admission irrelevant at this point. As far as premeditation versus, as counsel put it, second-degree attempted murder, so to speak, again, we have Salvador Rodriguez had two wounds to his – his stomach area, two wounds to the wrist, and five wounds to the back. The only evidence we have of who could have made these wounds was either Isaias or Petitioner. Petitioner has admitted stabbing Salvador with a knife. The fatal wounds to Isidro were made with a knife. Petitioner is the only one that had a knife at this point. Were the five wounds to the back shown to come from the same weapon? It's unclear. The testimony focused that trial on the fatal wounds to Isidro. But what we have from the evidence of the many people – and there was some conflicting testimony from the many people who witnessed this – but the evidence only puts Petitioner and his cousin Isaias in the – in the fracas with Salvador Rodriguez and Isidro. And so we don't – there's no other evidence – there was no other evidence before the jury that anyone could have inflicted these wounds on Salvador Rodriguez other than Isaias or Petitioner. And, Your Honors, unless the Court has any questions, I'm going to submit. Roberts. Thank you very much, Mr. Howard. Mr. – Mr. Bloom. Thank you, Your Honor. A very brief one with a rebuttal point, because there's only two things I wanted to say. With regards to why the trial court rejected the matter, a decision that was itself found to be improper was that with regards to Enriquez, the confession that was made to the person, he didn't believe it. He didn't believe Mr. Enriquez. That goes to trial. That goes to the weight of it. It wasn't for the Court to make that decision in and of itself. As to whether or not his mom and the confession or the admission to his mom should come in, again, he said, it came in too late. We're only finding out about this now instead of earlier. That goes to weight. It shouldn't have happened. As to the point about the question of the confessions to the police, the trial court doesn't even really make a reason why he doesn't allow that to come in. That was part of the motion for new trial. He said, that won't make any difference on it. He said, we've dealt with this issue before. They hadn't. And we're going to let the three judges up on top, meaning the three judges of the DCA, decide this case. The trial court makes no such justification for it and never even addresses the question of the videotape directly. There wasn't any justification for letting it out, for keeping it out. And the State court so found, the State court doesn't dispute that it was inadmissible. They just said that it didn't make any difference. And finally, I want to – the Attorney General ably presents his concerns as to whether or not it would have mattered or not. Would this have made a difference? And he argues ably that not necessarily so. It can't – it doesn't – my position is not absolutely established and so forth. All I can tell you right now, as kind as this Attorney General is, he's not – I'm not going to allow him to sit on my jury when we have this retrial, because he has that opinion. But he's doing something now which Mr. McGann never got a chance to do. He's sitting as a juror on this case, evaluating – admittedly evaluating evidence which is contradictory. And the jury that handled Mr. McGann's case didn't get the benefit of seeing those very powerful pieces of evidence as – to establish who wore that bloody plaid shirt and establishing it wasn't my client. Overwhelming evidence, I would believe. And that is my conclusion. That's exactly the point is that had that been presented, the jury quite definitely could have come to a different decision. Make one last stab for me – I'm a little slow – on why – why the identity of the – of the wearer of the shirt is such powerful evidence on the issue of premeditation. Okay. I deal with it in my brief and try to explain it, but here's my – my thumbnail version of it. When the jury looked at this evidence, there were, in my opinion – there were only two – two participants. One of them was clearly the heavy, clearly the bad guy, clearly doing most of the damage on the business end of that night. That's the plaid shirt guy. The other guy was very much a peripheral person who participated, but at a much lower level. I contend that had the jury – the jury, in my opinion, believed that my guy was wearing that plaid shirt, and they – and so they reached the decision that he's that bad guy. I'm saying had they realized that the cousin was wearing that – that plaid shirt, they would have put – seen the bone – the onus was on him. Then they would have independently taken a look at my guy and kind of called it out. They would have said, okay, the other guy, the plaid shirt guy, is doing most of the damage. He did most of the stabbing. He's wielding it bad. He's clearly in the middle of it. This other person was clearly less involved. And I think at that point would have established that the less involved could have found him guilty of second-degree murder, attempted murder, and not first. So you look at the overall evidence of how it was presented. You look also at the autopsy. I mean, and that was there. But the eyewitness – there's a whole – as the Attorney General said, there was lots of conflicting evidence as to what my client did. But I don't think there was any conflict that the really – the evil person in this, the real heavy person in this, was the plaid shirt guy. And that's why I think it's very important. Also, what did Isaias say? He said he was the guy doing the stabbing and that my client didn't do it. I mean, that's part of the thing that the jury didn't hear. That's pretty powerful stuff. It doesn't eliminate my guy, because Mr. Bad Guy might not know everything that his other friend is doing. But it's very powerful, shifting the burden over. Premeditation, attempting with deliberation to evaluate, to kill somebody, and just barely missing, that's a big standoff. Kennedy. Well, we know he stabbed him. Verrilli,, and whether he was at the front or the back, it seems to me, stabbing somebody from the back is more probative of premeditation than – you're not defending yourself. You're – the argument is you're defending somebody else. I'm just – I guess I'm just not getting the significance of the positioning of your client at the time he stabs – admittedly stabs Mr. Rodriguez. If the evidence could show that my client – if my client says that he went to this melee, or he went to this particular event, this particular action, to take Mr. – to take the attempted murder victim off of the battle, because he was attacking his cousin, to pull him away, tried to get him away, couldn't do it, stabbed – took his knife and hit him once on the shoulder. And the only reason I did it was to get him off and, in fact, it worked, because he turned and to me and pulled away. I was not trying to kill him. I was – and I wasn't doing it in – in this premeditation with the cool thinking that goes with the liberation to weigh and balance this – this sort of thing. Isn't that the difference? I did it in that – Kennedy, but you've just described all of that without mentioning the shirt once. Verrilli, I say – but my point is, if the jury – if my client said that, and if the jury believed that, would they have found him guilty of premeditated? I say no. So then I say the only difference of why they wouldn't believe that is because they thought he's wearing the shirt. Thanks very much. Thank you. Roberts. Thanks, gentlemen. The case just argued is submitted.
judges: Canby, Silverman , Leighton